**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| ANGELO COREY STACKHOUSE, | 3:11-cv-00495-ECR (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| DR. FAIRCHILD, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment (Doc. # 17.)[1] Plaintiff opposed (Doc. #29) and Defendants have replied (Doc. # 30). After a thorough review, the court recommends that the motion be denied on exhaustion grounds, except as to the claim related to Plaintiff chipping his tooth, and that summary judgment be granted in Defendants' favor as to the remaining Eighth Amendment claim.

## I. BACKGROUND

At all relevant times, Plaintiff Angelo Stackhouse (Plaintiff) was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 4) at 1.) The events giving rise to this litigation took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are ESP dentist, Dr. Fairchild; ESP dental assistant, Georgia Luce; and Warden Renee Baker. (*Id.*

---
[1] Refers to court's docket number.

at 2.) Plaintiff also named a Doe defendant desk sergeant, but to date, Plaintiff has not sought leave to amend his Complaint with respect to the true identity of the Doe defendant.

Plaintiff alleges that in November of 2009, he informed ESP medical staff that he had a bad tooth that needed a filling, causing Plaintiff mild discomfort. (Doc. # 4 at 3.) He asserts that he followed instructions to file a medical kite, and received a response from defendant Luce that he had been placed on an "extensive waiting list." (*Id.*) Plaintiff claims that months passed, and his tooth began to cause him to suffer from horrible pain. (*Id.*) Plaintiff alleges that he submitted an emergency grievance, and received a response several hours later that there was no emergency. (*Id.* at 3-4.) Plaintiff then informed Dr. Fairchild of his pain and inability to eat. (*Id.* at 4.) Plaintiff submitted another dental kite explaining his situation, and was told that he needed to be patient. (*Id.*) He further alleges that while he did not want to have his tooth pulled, he was told that the only way he would be able to see a dentist was to request that his tooth be pulled. (*Id.*) Dr. Fairchild responded to Plaintiff's grievance that due to deterioration of the tooth, it could not be preserved. (*Id.*) Dr. Fairchild eventually extracted the tooth. (*Id.* at 4-5.) Plaintiff alleges that in the process, Dr. Fairchild chipped Plaintiff's tooth. (*Id.* at 5.)

On screening, the court determined that Plaintiff states a colorable claim for deliberate indifference to a serious medical need under the Eighth Amendment. (Screening Order (Doc. # 3) at 3.)

Defendants now move for summary judgment, arguing: (1) Plaintiff failed to exhaust his administrative remedies prior to filing the Complaint; (2) Defendants did not act with deliberate indifference to Plaintiff's serious medical needs; (3) Defendants are entitled to qualified immunity; and (4) Defendants cannot be sued in their official capacity. (Doc. # 17.)

## II. LEGAL STANDARD

**A. Exhaustion**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

2

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

3

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the inmate grievance procedure set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 17-2 at 21-33 (Ex. N).) Under the version of AR 740 effective during the time period in question, the procedure consisted of: (1) an informal level grievance; (2) a first level grievance; and (3) a second level grievance. (*Id.* at 25-28.)

**B. Summary Judgment**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which

4

are irrelevant or unnecessary will not be considered. *Id.* at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the

1  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
2  While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be
3  drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not
4  significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations
5  omitted).

### III. DISCUSSION

**A. EXHAUSTION**

Defendants argue that with respect to the grievances that address Plaintiff's dental issues, grievances 20062912879 and 20062914740, Plaintiff did not complete the grievance process; therefore, he did not exhaust his administrative remedies before filing suit. (Doc. # 17 at 9-10.)

Plaintiff argues that he did exhaust his administrative remedies. (Doc. # 29 at 3-4.) He also appears to argue that the grievance process was futile because it would not have provided him with a resolution in this case because the damage had already been done. (*Id.*)

Preliminarily, the court notes that inmates are required to exhaust administrative remedies regardless of the type of relief sought and the type of relief available through the administrative procedures. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

**1. Grievance 20062912879**

First, with respect to grievance 20062912879, Defendants argue that Plaintiff submitted an informal level grievance, but when he attempted to file his first and second level grievances, he failed to attach the response to his informal level grievance and failed to resubmit the corrected grievance, constituting abandonment of this grievance. (Doc. # 17 at 10:4-13.)

Plaintiff submitted an informal level grievance dated January 16, 2011, stating that he sent a kite in April or May of 2010 to have a tooth filled, but did not see a dentist until months later, resulting in pain and the unnecessary loss of his tooth. (Doc. # 17-2 at 16 (Ex. M).)

According to the Nevada Offender Tracking Information System (NOTIS), the prison responded that Dr. Fairchild stated that the tooth was not restorable prior to the dental kite,

6

so it would not have mattered if Plaintiff were seen earlier. (Doc. # 17-2 at 6 (Ex. M).)

Plaintiff submitted a first level grievance on May 3, 2011, stating that he had not yet received a response to his first or second level grievances. (Doc. # 17-2 at 14 (Ex. M).)

A May 20, 2011 improper grievance memorandum states that Plaintiff received a response to his informal level grievance on February 22, 2011, and was asked to attach the response to the informal level grievance each time he received an improper grievance notice. (Doc. # 17-2 at 13 (Ex. M).) The memorandum also states, "[p]er AR 740 you have exhausted all your administrative remedies." (*Id.*)

Plaintiff submitted a second level grievance dated July 8, 2011, stating that he lost a tooth and suffered pain for six months unnecessarily. (Doc. # 17-2 at 15.)

The court addressed this issue in *Dennis v. Stubbs, et. al.*, 3:10-cv-00591-ECR (WGC) and in *Alexander v. State of Nevada, et. al.*, 3:10-cv-00429-RCJ (WGC). In both of those cases, the defendants raised the argument that the plaintiff did not properly exhaust his administrative remedies because he did not submit a copy of his informal level grievance along with his first level grievance. In both cases, the court issued recommendations denying defendants' unenumerated 12(b)(6) motion to dismiss. (*See* Doc. # 41 in 3:10-cv-00591-ECR (WGC), Doc. # 55 in 3:10-cv-00429-RCJ (WGC).) Senior United States District Judge Edward C. Reed, Jr. approved and adopted the recommendation in *Dennis*. (Doc. # 44 in 3:10-cv-00591-ECR (WGC).) The recommendation is still pending in *Alexander*. The rationale utilized in both of those cases is equally applicable here.

Under *Woodford*, Plaintiff was required to properly exhaust his available administrative remedies. *Woodford*, 548 U.S. at 89. As stated above, "proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

Defendants claim that Plaintiff's pitfall was in failing to attach a previous level grievance to the subsequent level grievance, and conclude that his failure to correct this deficiency

7

1  constitutes an abandonment of his grievance. While Defendants are correct that AR 740.06
2  states that a first level grievance that does not comply with procedural guidelines shall be
3  returned to the inmate unprocessed with instructions for proper filing (Doc. # 17-2 at 27 (Ex.
4  N)), they do not identify where in AR 740 it is specified that an inmate must attach his informal
5  level grievance to the first level grievance, or the first level grievance to the second level
6  grievance. A review of the entirety of AR 740 indicates this is not a requirement of the grievance
7  process.

8       AR 740 requires that a first level grievance related to dental issues be reviewed and
9  responded to by the highest level of nursing administration at the institution. (Doc. # 17-2 at
10 27 (Ex. N).) The inmate is required to provide a signed, sworn declaration of facts that form
11 the basis for the claim that the informal response is incorrect, including a list of persons with
12 relevant knowledge or information supporting the claim. (*Id.*) While AR 740 states that
13 "additional relevant documentation should be attached at this level," it does not specifically
14 require inclusion of the informal level grievance. (*Id.*) Likewise, the requirements for
15 submitting a second level grievance in AR 740 make no mention of attaching the lower level
16 grievance. (*See id.* at 28.) It makes sense that an inmate would not be required to re-submit
17 the lower level grievance given that AR 740 also provides that grievance documents are to be
18 stored at the institution where the grievance issue occurred, and employees participating in the
19 disposition of a grievance shall have access to records essential to disposition of the grievance.
20 (*Id.* at 23.)

21      The evidence demonstrates that Plaintiff complied with all procedural hurdles NDOC
22 held out to him in AR 740, and he appealed through all levels of the grievance process.
23 Defendants, therefore, have not met their burden of showing Plaintiff failed to properly exhaust
24 his administrative remedies. Accordingly, Defendants' motion to dismiss for failure to exhaust
25 administrative remedies should be denied insofar as it is based on grievance 20062912879.

26     **2. Grievance 20062914740**

27      Second, with respect to grievance 20062914740, where Plaintiff first raised the issue of

28

8

1  the chipped tooth, Defendants argue: (1) Plaintiff did not raise the chipped tooth issue in the
2  first level grievance; and (2) Plaintiff failed to file a second level grievance, constituting
3  abandonment of this grievance. (Doc. # 17 at 10.)

4      Preliminarily, the court agrees with Defendants that this is the only grievance that
5  references the allegation that Plaintiff's tooth was chipped during the extraction process.

6      Contrary to Defendants' assertion, Plaintiff submitted an *informal* level grievance dated
7  February 9, 2011, stating that he has filed several grievances regarding a delay in having a
8  filling replaced, resulting in the unnecessary removal of his tooth and the *chipping of another*
9  *tooth*. (Doc. # 17-2 at 20 (Ex. M).) This grievance was denied. (*Id.*)

10      Plaintiff submitted a first level grievance dated March 4, 2011, stating that he lost a tooth
11  and endured pain unnecessarily as a result of the delay in receiving dental care. (Doc. # 17-2
12  at 17 (Ex. M).) The first level grievance was denied. (*See id.* at 18.)

13      It appears that Plaintiff did not file a second level grievance.

14      As stated above, the court found that Plaintiff properly exhausted his administrative
15  remedies with respect to his claim related to the delay in receiving dental care in grievance
16  number 20062912879. Plaintiff did not raise the claim that his tooth was chipped in that
17  grievance. Therefore, to the extent Plaintiff alleges an Eighth Amendment claim related to his
18  chipped tooth, that portion of the claim should be dismissed without prejudice for failure to
19  exhaust available administrative remedies.

20  **B. SUMMARY JUDGMENT**

21      **1. Eighth Amendment**

22          **a. Summary of argument**

23      Defendants argue that Plaintiff cannot demonstrate a serious medical need or that
24  Defendants acted with deliberate indifference. (Doc. # 17 at 12-13.)

25      First, Defendants assert that Plaintiff cannot establish deliberate indifference because:
26  (1) he waited more than seven months to send a kite requesting dental services; (2) he did not
27  send a medical kite alleging that he was experiencing pain until July 25, 2010; and (3) Plaintiff

28                                           9

1 was scheduled to be seen on the next available day, August 13, 2010, and the tooth extraction
2 was performed. (Doc. # 17 at 12-13.) In sum, Defendants Luce and Fairchild maintain that once
3 they were made aware of Plaintiff's claims of dental pain, they acted to alleviate the pain. (*Id.*)
4 Defendant Baker asserts that she responded in an appropriate manner to Plaintiff's grievances
5 given the treatment he received. (*Id.* at 13.)

6 Second, Defendants argue that Plaintiff cannot demonstrate a serious medical need
7 because he failed to submit a kite requesting dental services from the time he arrived at ESP
8 in November of 2009, until May 20, 2010, and did not complain of pain with respect to his
9 tooth until July 25, 2009. (Doc. # 17 at 13.)

10 Plaintiff argues that he sent his first medical kite to dental in September of 2009, while
11 at High Desert State Prison (HDSP), when his filling fell out, but did not receive a response.
12 (Doc. # 29 at 4.) Plaintiff arrived at ESP on November 4, 2009, and was interviewed by ESP
13 medical staff, whom he showed his tooth and was instructed to kite dental. (*Id.* at 4-5.)
14 Plaintiff claims he submitted a kite to dental as instructed. (*Id.* at 5.) Plaintiff asserts that even
15 though he submitted a kite to dental, he was not seen and the condition of his tooth worsened.
16 (*Id.*) Plaintiff saw Dr. Fairchild on August 13, 2010, when it was determined that his tooth had
17 to be extracted. (*Id.*) Plaintiff claims that he filed several emergency grievances because of the
18 pain he was in. (*Id.*)

19 **b. Standard**

20 A prisoner can establish an Eighth Amendment violation arising from deficient medical
21 care if he can prove that prison officials were deliberately indifferent to a serious medical need.
22 *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The requirement of deliberate indifference is less
23 stringent in cases involving a prisoner's medical needs than in other cases involving harm to
24 incarcerated individuals because '[t]he State's responsibility to provide inmates with medical
25 care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*,
26 974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104
27 F.3d. 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an

28                                                    10

inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d at 1059. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id*. (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation

11

1 omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *see also* Snow v. McDaniel, 2012 WL 1889774, at * 6 (9th Cir. May 25, 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To establish that a difference of opinion amounted to deliberate indifference, the inmate "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the course of treatment was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted); *see also Snow v. McDaniel*, 2012 WL 1889774 at * 6 (quoting *Jackson*, 90 F.3d at 332).

### c. Analysis

AR 631 governs dental services within NDOC. (*See* Doc. # 17-1 (Ex. F) at 22-26.) According to AR 631, when an inmate has a dental examination, they "will receive immediate treatment on an emergency basis' [sic] or" "the inmate will be given a specific appointment date or placed on a waiting list" based on a priority classification system. (*Id.* at 24-25.) When an inmate is transferred between institutions, a review is conducted with reference to the classifications made by dental at the sending institution. (*Id.* at 25.)

Plaintiff transferred from HDSP to ESP on November 4, 2009. (Doc. # 17-1 (Ex. A) at 10.) The transfer report from HDSP to ESP indicates that Plaintiff's dental needs were classified as level 1. (Doc. # 19-1 (Ex. C) at 3.)[2] The "Intrasystem Transfer Screening" form indicates

---

[2] According to Defendants, a level 1 classification means that there is no dental care required or the inmate requires minimal routine comprehensive dental treatment. (*See* Doc. # 17 at 3, Doc. # 17-1 (Ex. E) at 20.)

12

1  that upon arrival at ESP, Plaintiff was instructed to kite dental regarding a filling. (Doc. # 19-1
2  (Ex. C) at 2.)
3       Neither party produced any record of Plaintiff raising his dental issue from the time he
4  arrived at ESP in November of 2009 until May 20, 2010.
5       Plaintiff sent a dental kite on May 20, 2010, stating that his filling fell out, making it
6  difficult for him to eat. (Doc. # 19-4 (Ex. G) at 12.) According to defendant Luce, her first
7  involvement with Plaintiff was when she received this kite on May 20, 2010. (Doc. # 19-5 (Ex.
8  H) at 3 ¶ 6.) Because Plaintiff's kite did not allege pain, she followed NDOC protocol and
9  scheduled an examination, but did not list a date. (*Id.*)
10      In her declaration, defendant Luce states that it is standard practice when a dental kite
11 does not allege pain "to schedule an examination, but not list an examination date on the kite
12 as there are variables which may alter the date an inmate receives an examination," including
13 the fact that "six or less inmates can be examined in any one day and the list of inmates
14 requesting dental services is lengthy." (Doc. # 19-5 (Ex. H) at 2 ¶¶ 2, 4.) On the other hand,
15 if an inmate indicates he is in pain in his kite, he is scheduled for an examination for the next
16 available day the inmate's unit can receive dental examinations. (*Id.* at ¶ 5.)
17      There are no other records related to Plaintiff's dental issues between May 20, 2010 and
18 July 25, 2010.
19      Plaintiff sent another dental kite on July 25, 2010, requesting to see a dentist and stating
20 that he was in "extreme pain" and having "difficulty eating." (Doc. # 19-4 (Ex. G) at 5.)
21 Defendant Luce scheduled Plaintiff for an examination on the next available date, which was
22 August 13, 2010. (Doc. # 19-5 (Ex. H) at 3 ¶ 7.)
23      Plaintiff was examined by defendant Dr. Fairchild (assisted by defendant Luce) on
24 August 13, 2010. (Doc. # 19-5 (Ex. H) at 3 ¶ 8.) Plaintiff was informed that his tooth had to
25 be extracted, he signed a consent form for the procedure, and the tooth was extracted.
26 (Doc. # 19-5 (Ex. H) at 3 ¶ 8; Doc. # 19-5 (Ex. I) at 6; Doc. # 19-6 (Ex. L) at 8.)
27      Defendant Baker's name appears as the grievance coordinator, and it appears she
28

13

approved denial of Plaintiff's informal level grievance dated January 16, 2011. (Doc. # 17-2 (Ex. M) at 16.) She also approved denial of an informal level grievance related to this issue on February 27, 2011. (Doc. # 17-2 (Ex. M) at 20.) Finally, Defendant Baker's name appears as the grievance coordinator for Plaintiff's first level grievance dated May 3, 2011. (Doc. # 17-2 (Ex. M) at 14.)

First, the court will address whether Plaintiff suffers from a serious medical need. As indicated above, in determining whether a serious medical need exists, relevant factors include: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain[.]" *McGuckin*, 974 F.2d at 1059-60.

From the time he arrived at ESP in November of 2009 until May 20, 2010, there is no objective evidence that Plaintiff suffered from a serious medical need. While Plaintiff claims in his opposition that he submitted a dental kite upon his arrival to ESP (Doc. # 29 at 4-5), and that he filed several emergency grievances (*id*), he provides no evidence to support these assertions.

On May 20, 2010, Plaintiff submitted the dental kite stating that his filling fell out which made it difficult for him to chew. (Doc. # 19-4 (Ex. G) at 12.) There is no other record regarding his dental issues between May 20, 2010 and July 25, 2010. On July 25, 2010, Plaintiff submitted a second dental kite where he first mentions pain from his dental condition. (Doc. # 19-4 (Ex. G) at 5.) Plaintiff was seen by Dr. Fairchild on August 13, 2010, and his tooth was extracted. (Doc. # 19-5 (Ex. H) at 3 ¶ 7; Doc. # 19-5 (Ex. H) at 3 ¶ 8; Doc. # 19-5 (Ex. H) at 3 ¶ 8; Doc. # 19-5 (Ex. I) at 6; Doc. # 19-6 (Ex. L) at 8.)

The court finds that the objective evidence indicates that Plaintiff suffered from a serious medical need at least as of the time he submitted the dental kite stating that he was experiencing extreme pain on July 25, 2010, until the tooth was extracted on August 13, 2010. The evidence indicates that Dr. Fairchild did in fact find that this was a medical condition that

14

required treatment, and there is no evidence to suggest that Plaintiff was not in fact suffering from extreme pain from the time he kited dental on July 25, 2010, until the tooth was extracted. The evidence is not sufficient to establish that Plaintiff suffered from a serious medical need prior to that time. The dental kite dated May 20, 2010, merely states that Plaintiff's filling fell out, and does not indicate Plaintiff was in any sort of pain at that time. There is nothing else in that kite indicating a serious medical need.

Now, the court must determine the subjective element of the claim, *i.e.*, whether Defendants were deliberately indifferent to Plaintiff's serious medical need. Because the court has found that the evidence does not establish Plaintiff suffered from a serious medical need until July 25, 2010, the court's inquiry focuses on Defendants' conduct between July 25, 2010 and August 13, 2010.

According to the evidence before the court, when defendant Luce received Plaintiff's July 25, 2010 dental kite, she scheduled Plaintiff for an examination on the next available date, which was August 13, 2010. (Doc. # 19-5 (Ex. H) at 3 ¶ 7.) Plaintiff was examined by Dr. Fairchild on August 13, 2010; was informed that the tooth required extraction; consented to the extraction; and the procedure was performed. (Doc. # 19-5 (Ex. H) at 3 ¶ 8; Doc. # 19-5 (Ex. H) at 3 ¶ 8; Doc. # 19-5 (Ex. I) at 6; Doc. # 19-6 (Ex. L) at 8.) Defendant Baker's only involvement was related to the grievances Plaintiff submitted as to this issue after-the-fact.

The court cannot conclude that this conduct amounts to deliberate indifference. Once Defendants were made aware that Plaintiff was suffering from pain as a result of his dental condition, he was scheduled for an appointment, and treated. While there was a delay of a few weeks between the dental kite alleging pain and the examination and extraction, there is no evidence that this delay led to further injury. Accordingly, the court recommends that summary judgment be granted in favor of Defendants.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order as follows:

(1) **DENYING** Defendants' motion on the ground that Plaintiff's action should be

15

dismissed for failure to exhaust available administrative remedies, **EXCEPT** that Plaintiff's Eighth Amendment claim related to his chipped tooth should be **DISMISSED WITHOUT PREJUDICE**; and

(2) **GRANTING** summary judgment in favor of Defendants as to the remaining Eighth Amendment claim.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: May 31, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

16